IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02224-MSK-MJW

STERLING CONSTRUCTION MANAGEMENT, LLC,

      Plaintiff,

v.

STEADFAST INSURANCE COMPANY; and CHASE CONSTRUCTORS, INC.,

      Defendants.

AND

CHASE CONTRACTORS, INC.,

      Third-Party Plaintiff,

v.

WILLBROS ENGINEERS, INC.,

      Third-Party Defendant.

_____

OPINION AND ORDER GRANTING, IN PART, MOTIONS FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to Defendant Steadfast Insurance

Company's ("Steadfast") Objections (**# 86**) to the Magistrate Judge's July 16, 2010 Order (**# 84**)

granting Plaintiff Sterling Construction Management, Inc.'s ("Sterling") Motion to Compel

(**#59**), and Sterling's response (**# 95**); Defendant Chase Constructors, Inc.'s ("Chase") Motion

for Summary Judgment (**# 100**) on its counterclaim, Sterling's response (**# 114**), and Chase's

reply (**# 126**); Sterling's Cross-Motion for Summary Judgment (**# 105**) against Chase, Chase's

response (**# 120,** as corrected **# 123**), and Sterling's reply (**# 130**); Steadfast's Motion to

Bifurcate (**# 110**), Chase's response (**# 117**), Sterling's response (**# 119**), and Steadfast's reply

(**#125**); Third-Party Defendant Willbros Engineers, Inc.'s ("Willbros") Motion for Attorney's

Fees (**# 136**) against Chase, Chase's response (**# 142**), and Willbros' reply (**# 144**); Chase's

Objections (**# 140**) to the Magistrate Judge's December 1, 2010 Order (**# 135**) granting Sterling's

Motion to Strike (**# 114**) Chase's Supplemental Designation of Non-Parties at Fault (**# 108**), to

which no response was filed; Steadfast's Motion for Summary Judgment (**# 143**) on Sterling's

claims against it, Sterling's response (**# 150**), and Steadfast's reply (**# 167**); Chase's Motion for

Leave to Supplement (**# 145**) its summary judgment response (**# 105**), Sterling's response

(**#146**), and Chase's reply (**# 147**); Willbros' Motion for Entry of Partial Judgment Pursuant to

Fed. R. Civ. P. 54(b) (**# 157**), and Chase's response (**# 166**); and Chase's Motion for Leave to

Supplement (**# 174**) its response (**# 142**) to Willbros' Motion for Attorney's Fees, Willbros'

response (**# 175**), and Chase's reply (**# 176**).

## <u>FACTS</u>

The basic facts underlying this action can be simply stated; details will be supplied as

necessary as part of the Court's analysis.

Overland Pass Pipeline Company ("Overland") contracted with Sterling to construct a

pipeline form Laramie, Wyoming to Sterling, Colorado.  Sterling, acting as general contractor,

subcontracted with Willbros to perform construction design services on part of the project and

with Chase to perform horizontal drilling in accordance with Willbros' designs.  On or about

January 26, 2008, Chase was performing drilling services beneath the North Sterling Irrigation

Canal.  The drilling ruptured the canal, causing damage to the canal itself, nearby properties, and

the pipeline work being performed.  Sterling thereafter indemnified Overland for losses resulting

from the canal breach.

Not surprisingly, fingerpointing ensued, which  blossomed into this multi-faceted

litigation.  Sterling seeks insurance coverage from Steadfast and contractual indemnification

from Chase; Chase seeks payment for unpaid invoices from Sterling; and Willbros seeks

attorneys fees from Chase relating to tort claims that were previously dismissed.

## ANALYSIS

Because of the large number of motions at issue and the multiplicity of semi-discrete

disputes they address, the Court finds it most practical to group and address the motions based

on the nature of the individual disputes between and among the various parties.

### A.  Sterling vs. Chase

Four of the pending matters involve the disputes between Sterling and Chase.  The Court

begins with those parties' cross-motions for summary judgment against each other.

#### 1.  Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment if no

trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary

adjudication is authorized when there is no genuine dispute as to any material fact and a party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what

facts are material and what issues must be determined.  It also specifies the elements that must be

proved for a given claim or defense, sets the standard of proof and identifies the party with the

burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis*

*Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is

"genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of

proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another").

    2. <u>Chase's motion</u>

Chase seeks summary judgment on its contract-based counterclaim against Sterling, insofar as Chase contends that it submitted three invoices, totaling $ 288,750, to Sterling for work performed by Chase that Sterling allegedly conceded was satisfactory.

To establish a claim for breach of contract, Chase has the burden of proving: (i) an enforceable contract existed between the parties; (ii) Chase fully performed its obligations under that contract or that its performance was excused by Sterling's conduct; (iii) Sterling did not perform its obligations under the contract; and (iv) Chase was damaged as a result. *Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011).

There appears to be no dispute that Sterling and Chase were parties to an enforceable contract, documented as the "Subcontract Agreement." Similarly it does not appear that the parties dispute that under the "Subcontract Agreement," Sterling was obligated to make payment to Chase for services rendered. Chase directs the Court to the deposition of Sterling's designated representative, Stephen Simpson, regarding the invoices pertaining to charges unpaid by Sterling. For each invoice, Mr. Simpson was asked whether Sterling had any complaints about

the work described in the invoice, whether the invoice accurately described the work performed by Chase, and whether Chase performed all of its contractual obligations to Sterling with regard to the work referenced in each invoice.  In each instance, Mr. Simpson responded affirmatively.  This, plus the undisputed evidence that Sterling failed to pay the three invoices makes out a *prima facie* claim for breach of contract as it relates to the three invoices.

Although Sterling does not dispute the existence of a contract nor the fact that Chase competently performed the work reflected in the three invoices, it contends that its performance under the contract – payment of the invoices – is not yet required because a dispute between the parties continues with regard to Chase's liability for losses suffered by Sterling as a result of the canal breach (which is not work embodied in any of the three invoices at issue).  Sterling points to language in the Subcontract Agreement that states "Sterling may withhold any payment due until any defects in the work are remedied."  Sterling construes this language to permit it to refuse to pay invoices tendered by Chase for work that Sterling otherwise concedes is acceptable until the parties resolve their dispute with regard to Chase's allegedly unacceptable work under the canal.

Both parties' positions on this motion have some merit.  Chase is correct that Sterling has not come forward with any evidence to indicate that the work embodied by the three invoices was not performed according to the contract and thus, under the terms of the contract, Sterling is obligated to Chase for the full amount of each invoice – a total of $ 288,750.  At the same time, Sterling is correct that a fair reading of the contact permits it to withhold payments it owes to Chase – including the $ 288,750 here – until all disputes between the companies have been resolved, even if those disputes are tangential to the work for which payment is sought.

Paragraphs 6 and 14 of the Subcontractor Agreement both make reference to Sterling withholding or offsetting "<u>any</u> payment" owed to Chase as a result of disputes over the quality of Chase's workmanship, not just payments relating to the disputed workmanship.  (Emphasis added.)  Under these circumstances, where a dispute remains as to Chase's work on the canal phase of the project, Chase is not entitled to an immediate judgment in its favor for the unpaid invoices.  However, pursuant to Fed. R. Civ. P. 56(g), the Court finds that Sterling's liability to Chase in the amount of $ 288,750, pursuant to the three invoices is undisputed, subject only to offset should Sterling recover against Chase on its own claims.  The Court will therefore treat the fact of Sterling's liability to Chase in this amount as established for purposes of further proceedings in this case.

### 3. <u>Sterling's motion</u>[1]

Sterling seeks summary judgment on its claim of breach of contract against Chase. Sterling contends that Chase breached the contract by failing to competently perform its obligations when drilling under the canal.  Sterling points to the following items of evidence as proof that Chase's performance with regard to the canal drilling fell below the workmanlike standard required by the contract: (i) Chase did not obtain a soil data or geotechnical report before beginning the drilling, even though it would expect to receive one on a job this size; (ii) had it had knowledge of the soil conditions at the time, Chase would have approached the drilling in a different manner; and (iii) Chase's principal admitted that the breach of the canal

---

[1]Several months after filing it, Chase has moved to supplement its response to Sterling's motion to incorporate an argument raised by Steadfast in its dispute against Sterling.  The Court has some doubt that Chase's proposed "supplemental authority" is proper, but need not decide the question as the Court resolves Sterling's motion in Chase's favor on entirely unrelated grounds.  Accordingly, the Court denies Chase's motion to supplement as moot.

was caused by Chase's drilling activities.[2]

The Court finds that this evidence alone is insufficient to carry Sterling's burden of showing that Chase's performance breached the terms of the parties' agreement. It is undisputed that the contract's standard called for Chase to "perform the work in a good and workmanlike manner, in accordance with the best practices in the industry." However, Sterling has not come forward with any evidence that establishes what "good and workmanlike manner" and "best practices in the industry" mean in this context. Except in rare circumstances where the relevant standard of care does not require specialized or technical knowledge on the part of the factfinder, the party asserting a breach of the standard of care must put on evidence of what that standard is, either by expert testimony, legislative enactment, or some other proof of what would typically be expected of a competent actor in the field. *Hice v. Lott*, 224 P.3d 139, 143 (Colo. App. 2009). This case, involving underground drilling, obviously invokes a standard of care that falls outside the routine knowledge of the general public and thus, Sterling is required to put on proof of what that standard entails in order to demonstrate that Chase's conduct fell below it.

Merely asserting that Chase would expect to receive a soil report and that it would have acted differently had it had one is insufficient, of itself, to demonstrate that Chase's performance fell below the duty of care expected of persons drilling pipelines. The record does not reflect

---

[2]Sterling makes one other assertion of fact that it contends is evidence of Chase's subpar performance – that Chase did not submit any questions or recommendations for changes in the construction design – that is not supported by citations to evidence in the record. A party seeking or opposing summary judgment may not simply assert facts; it must point the Court to evidence supporting that factual assertion. Fed. R. Civ. P. 56(c)(1)(A); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Because Sterling does not point the Court to the evidence in the record where that assertion may be corroborated, the Court does not consider that assertion when ruling on the motion.

that Chase's expectation of receiving a soil report before drilling derived from standards typically applicable to the drilling industry, as opposed to, say, an expectation arising from promises made by Sterling or others that a soil report would be provided, or a belief that a "job this size" would "usually" have such a report.  The fact that Chase acknowledges that its drilling caused the breach of the canal adds nothing more to this analysis.  The mere fact that the canal was breached as a result of Chase's work does not necessarily warrant the conclusion that Chase's work was less than workmanlike; any number of facts external to Chase's performance could explain why competent work by Chase nevertheless resulted in the breach of the canal.

Because Sterling has not come forward with sufficient evidence to demonstrate that Chase's performance was less than workmanlike, and thus in breach of the contract, Sterling is not entitled to summary judgment on its breach of contract claim.  That claim will await trial.

3.  Chase's objections

The remaining matter germane to Chase's dispute with Sterling concerns a ruling by the Magistrate Judge striking Chase's designation of non-parties at fault.

On October 1, 2010, Chase filed a notice pursuant to C.R.S. § 13-21-111.5, identifying Willbros as a party potentially at fault in the dispute between Sterling and Chase.  C.R.S. § 13-21-111.5 provides that "no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury," and provides a mechanism by which "negligence or fault of a nonparty may be considered if . . . the defending party gives notice that a nonparty was wholly or partially at fault."  Sterling moved (**# 115**) to strike Chase's designation, noting that the claims in this case (between Sterling and Chase, or between Chase and Willbros) are contractual in nature,

not tortious, and thus, a designation of non-parties at fault, which is inherently relevant only to tort claims, is inappropriate. The Magistrate Judge granted (# 135) Sterling's motion and struck Chase's designation, explaining that "the comparative fault statute [C.R.S. § 13-21-111.5] does not apply to claims that are premised upon contract." *Citing Trustees of the Colorado Laborer's Health and Welfare Trust Fund v. American Benefit Plan Administrators, Inc.*, 2005 WL 1661079 (D. Colo. July 14, 2005).

Chase filed timely Objections (# 140) to the Magistrate Judge's Order pursuant to Fed. R. Civ. P. 72(a). It argues that "to the extent that Sterling has a viable negligence claim against Chase, Chase has the right to designate those non-parties that were at fault." In addition, it argues that "it is not clear that non-parties at fault cannot be designated in relation to claims sounding in contract," citing *Loughridge v. Goodyear Tire and Rubber Co.*, 207 F.Supp.2d 1187 (D. Colo. 2002).

Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

The Court finds that Chase's Objections are well-taken. Although C.R.S. § 13-21-111.5 appears to apply only to tort claims, the 10th Circuit has recognized that certain claims, although

nominally designated as contract claims, nevertheless turn on the application of tort-like duties, thereby warranting application of C.R.S. § 13-21-111.5. *FDIC v. Clark*, 978 F.2d 1541, 1552 (10th Cir. 1992). In *Clark*, the plaintiff brought claims of breach of contract/breach of implied warranty against two lawyers, arguing that the lawyers had engaged in professional malpractice. The trial court proposed instructing the jury in accordance with C.R.S. § 13-21-11.5, but the plaintiff objected, arguing that "its claim was one for breach of implied warranty . . . and thus was a breach of contract claim not subject to Colorado's proportionate liability statute." *Id.* at 1551. The trial court noted that "the negligence and contract claims . . . should be merged into one hybrid 'tort claim for malpractice.'" *Id.* The 10th Circuit agreed with that characterization, finding that "while the question of whether the relationship exists requires a general contractual analysis, the question of whether one exercised a duty arising out of that contract sounds in tort," and affirmed the trial court's use of the comparative fault instruction. *Id.*

 *Clark*'s analysis is equally applicable here. Although Sterling's claim[3] against Chase is one for breach of contract, this Court's prior decision made clear that the contractual provisions at issue invoke the same duties of care as does tort law. As in *Clark*, a contractual analysis is necessary to define the extent of the relationship between Sterling and Chase as a result of the Subcontractor Agreement, but once that relationship is established (and both parties

---

[3]Chase is correct that Sterling has asserted two claims against it, one sounding in contract and the other alleging negligence. Although it is highly doubtful that Sterling's negligence claim remains colorable in light of the reasoning in the Court's ruling dismissing Chase's tort claims against Willbros pursuant to the economic loss rule (and it is particularly curious that Sterling would continue to assert that claim in an Amended Complaint (**# 99**) filed shortly after this Court's ruling on Chase's tort claim against Willbros), Sterling's negligence claim remains at least nominally extant. Nevertheless, the Court focuses its analysis at this time on Sterling's contract claim.

agree that it has been), the determination of whether the contract was breached is, for all practical purposes, one of tort.  This distinguishes the instant case from *American Benefit Plan*, cited by the Magistrate Judge.  There, the contract claims at issue were for more conventional contract claims, such as breach of fidicuary duty, and thus, C.R.S. § 13-21-111.5 was found not to apply.  Because *American Benefit Plan* did not involve "contract" claims that were merely tort claims in a contractual wrapper, it is distinguishable from the instant case.  Accordingly, guided by *Clark*, this Court finds that the Magistrate Judge's decision to strike Chase's designation of non-parties at fault was contrary to law and the Court vacates that Order.

### B.  Sterling vs. Steadfast

Sterling has sued Steadfast, its insurance carrier, contending that its policy with Steadfast requires Steadfast to indemnify Sterling for the various items of damages it has suffered as a result of the canal breach and this litigation.  In its Amended Complaint (**# 99**), Sterling asserts four "claims" against Steadfast: (i) breach of insurance contract; (ii) bad faith breach of insurance contract; (iii) a "claim" for exemplary damages resulting from Steadfast's bad faith breach; and (iv) violation of C.R.S. § 10-3-1116, which provides for double benefits when an insurer's payment of benefits has been "unreasonably delayed or denied."

#### 1.  Steadfast's summary judgment motion

Steadfast has moved for summary judgment on Sterling's claims for breach of insurance contract and bad faith breach.  With regard to the breach of insurance contract claim, Steadfast first argues that Sterling is seeking coverage for four categories of payments it was forced to make as a result of the canal incident, none of which, according to Steadfast, fall within the policy's coverage: (i) approximately $ 687,000 that Overland withheld from Sterling's final

payment (apparently with Sterling's agreement) to reflect claims for losses made against Overland by third parties as a result of the breach, which Steadfast alleges is not covered by the contract because Sterling was not "legally obligated" to pay this sum to Overland under what Steadfast contends is an indemnification clause that is void as against public policy; (ii) an unspecified amount claimed by Sterling for defending Chase's counterclaim against Sterling for non-payment of the invoices discussed above; Steadfast alleges that this counterclaim is not "property damage" caused by an "occurrence" and is thus not covered; (iii) approximately $215,000 paid to Overland by Sterling[4] for "costs to investigate and analyze various claims following the breach of the canal," including fees for attorneys, a forensic accountant, water engineers, and a claims adjuster, among others; Steadfast argues that these amounts are excluded from coverage because they are "attorney fees and litigation expenses" that were not incurred by Overland in conjunction with an actual legal proceeding; and (iv) approximately $ 188,000 in attorney's fees incurred by Willbros in defense of Chase's counterclaims, which Steadfast contends is not covered because the policy expressly excludes coverage for injuries arising out of conduct by engineers and surveyors.[4] Steadfast offers several additional arguments with regard to Sterling's remaining claims against it: Steadfast is entitled to judgment on Sterling's bad faith breach claim for the same reasons; Steadfast is entitled to judgment on any "claim" for punitive

---

[4]It appears that the $ 215,000 payment to Overland is a subset of the $ 687,000 payment discussed previously.

[4]Steadfast's brief makes a passing reference to another sum claimed by Sterling to be covered by the policy – "$ 340,000 Sterling allegedly incurred to repair the canal" – which Steadfast alleges Sterling cannot collect from it because "Sterling admittedly withheld the sum" from Chase. Steadfast offers no further argument on this issue, and thus, the Court does not consider or address it.

damages, in that Sterling has failed to demonstrate that any injury it sustained was the result of "fraud, malice, or willful and wanton conduct," particularly insofar as Sterling advised Steadfast not to undertake any efforts to investigate or participate in the resolution of the claims against Sterling; and Sterling's claims under C.R.S. § 10-3-1115 are untimely, fails to state a claim, and the statute not subject to retroactive application.

a. <u>Payments to Overland</u>

The Court turns to Steadfast's first argument: that Sterling was not "legally obligated" to indemnify Overland for claims against Overland by third parties because the indemnification language in Sterling's contract with Overland is non-enforceable under C.R.S. § 13-21-111.5(6). The Court begins with the statute's text.  After reciting legislative findings that "construction businesses in recent years have begun to use contract provisions to shift the financial responsibility for their negligence to others, thereby circumventing the intent of tort law," the statute provides that "any provision in a construction agreement that requires a person to indemnify . . . another person against liability for damage . . . caused by the negligence or fault of the indemnitee . . . is void as against public policy and unenforceable."  C.R.S. § 13-21-111.5(6)(a)(III), (b).  Thus, the question presented is whether Sterling's agreement with Overland required Sterling to indemnify Overland for Overland's own negligence or fault.

The indemnification language at issue between Sterling and Overland is rather dense with redundant descriptive clauses, but stripped to its basics, it contains three promises:

• "[Sterling] agrees to protect, indemnify, and hold harmless [Overland and] Willbros . . . from [losses arising from] negligent acts of [Sterling], its agents, subcontractors, or employees. . . ."

• "[Sterling] further agrees that it shall . . . defend any suit or action brought against [Overland or Willbros] and shall pay all damages, costs and expenses . . . in connection

14

therewith or any matter resulting for which it is legally liable hereunder."

      • "Notwithstanding the foregoing, [Sterling] shall not be required to protect [or] indemnify [Overland or Willbros] against any claims to the extent arising out of . . . negligent acts or omissions of [Overland]."

      Obviously, the first provision, which obligates Sterling to indemnify Overland and Willbros for losses resulting from "negligent acts of Sterling" is not objectionable under C.R.S. §13-21-111.5(6)(b).  Steadfast appears to believe that the second provision runs afoul of that statute, while Sterling contends that the third provision remedies any statutory conflict.

      Steadfast contends that "indemnification language like that in the second provision has been held to 'unambiguously' require the indemnitor to indemnify the indemnitee for the indemnitee's own negligence," citing *LaFarge North America, Inc. v. K.E.C.I. Colorado, Inc.*, 250 P.3d 682 (Colo. App. 2010).  In *LaFarge*, LaFarge was the general contractor on a highway project, and KECI was its subcontractor.  A driver was injured by a piece of roadway equipment and sued both LaFarge and KECI.  LaFarge demanded indemnification from KECI pursuant to a provision in the subcontract that obligated KECI to indemnify LaFarge "from any and all claims, suit, or liability . . . on account of [sic], arising in whole or in part of [sic] any act or omission of [KECI]." 250 P.3d at 685.  Because the language required indemnification of "any and all" claims "arising <u>in whole or part</u>" from KECI's acts, the Colorado Court of Appeals found that this language "unambiguously requires [KECI] to indemnify Lafarge for Lafarge's own negligence where Lafarge's liability arises out of any incident which is at least partially the result of [KECI]'s acts or omissions."  *Id.* at 686 (emphasis added).

      Steadfast is correct that the second provision quoted above, viewed through the lens of *LaFarge*, arguably requires Sterling to indemnify Overland in "any suit or action," potentially

even one in which Overland is contributorily negligent.  Steadfast argues that, as a result, the indemnification language is void as a against public policy by operation of C.R.S. § 13-21-111.5(6)(b).

Such conclusion is not necessarily self-evident, however.  The express legislative purpose of § 111.5(6) is to prevent the invocation of indemnification clauses for the benefit of persons who are themselves allegedly or actually contributorily negligent.  There seems to be no public purpose advanced by voiding indemnification agreements that, although pregnant with a latent possibility of legislatively-disapproved mischief, are not used to indemnify a culpable tortfeasor.[5]  The question becomes whether Sterling indemnified Overland for losses caused in whole or in part by Overland's negligence (something the legislature expressly prohibits) or whether Sterling indemnified Overland for losses caused by Sterling's or another's negligence (a situation the legislature does not address and, presumably, would not oppose).

The record before the Court is insufficient to make that determination.  Steadfast has not pointed the Court to evidence that clearly outlines the nature of the third-party claims that were made against Overland, and for which Overland sought indemnification from Sterling.  The only evidence of these claims in the record is a February 2009 letter from Overland to Sterling stating

---

[5]This Court's research has not turned up any case in which the specific provisions of C.R.S. § 13-21-111.5(6), added to the statute in July 2007, appear to have been interpreted by other courts.  *LaFarge*, decided in 2010, invoked the common-law principle that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties," apparently drawn from *Public Service Co. v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283 (Colo. 1992) (and effectively overturned by the legislature in 2007), and made no reference to C.R.S. § 13-21-111.5(6).  250 P.3d at 686.  Thus, as a matter of first impression, this Court would be extremely reluctant to read § 111.5(6)(b) to void an indemnification clause as against public policy without a showing that it was being invoked in the very circumstances that the legislature sought to prevent.

that "several third parties made claims against [Overland] for damages" and that Overland was therefore holding back $ 687,000 of payment to Sterling.  The Court cannot speculate as to the basis of the claims asserted against Overland.  Without some indication that such claims were premised in part on Overland's negligence, rather than negligence entirely owing to Sterling or another party, the Court cannot say that Overland sought indemnification of its own negligence.

In its reply brief, Steadfast argues for the first time that "Chase and even Sterling have alleged that Overland and/or Willbros' work caused or contributed to the cause of the breach of the canal."  This statement contains several references that are arguably red herrings with regard to the indemnification issue.  First, Chase's allegations as to whose negligence caused the canal rupture is irrelevant to this issue.[6]  Second, the reference to the negligence of Overland **and /or** Willbros is confusing.  Although the negligence of Overland is pertinent to the indemnification issue, the negligence of Willbros is not because Willbros was a subcontractor to Sterling.  Arguably, Willbros' negligence would be a proper subject for indemnification by Sterling to Overland.

The only pertinent portion of this statement is Sterling's belief that the canal rupture was due, at least in part, to Overland's negligence.   Steadfast's evidence of this is a single exchange

---

[6] Steadfast also points to a notice of non-party at fault (**# 20**) filed by Chase in November 2009, nine months after Sterling had agreed to indemnify Overland and two months after Sterling commenced this action against Steadfast and Chase.  Chase's notice alleges that Overland was directly negligent (*c.f.* vicariously liable for Willbros' negligence) by, among other things, negligently supervising Willbros, negligently providing project design and construction documents, and negligently failing to mitigate its repair and remediation costs.

This is equally unpersuasive.  Steadfast has not shown how Chase's allegations of Overland's negligence can be imputed to Sterling.  Moreover, the validity of Sterling's agreement to indemnify Overland must be assessed in light of the facts as they existed at that time – February 2009 – not as a result of later-filed allegations of Overland's negligence.

at the deposition of Sterling's principal, Pat Simpson.  Simpson was asked "Do you dispute that

you made a statement . . . that [Overland] did not advise Sterling that the canal should be dug

when empty," to which Simpson responded "I wouldn't dispute it."  Taken alone and in the

abstract, this statement gives no indication that Sterling necessarily believed Overland was

contributorily negligent in bringing about the accident.  Among other things, the statement does

not give any indication that Simpson believed that Overland had a duty of care to advise Sterling

how the canal should be dug, much less that Overland's failure to do so constituted a breach of

that duty of care, much less that such a breach was a contributing cause of the accident.  Thus,

this deposition excerpt is not sufficient to establish that Sterling  indemnified Overland for

Overland's own negligence.

Because the Court finds that Steadfast has not come forward with sufficient evidence to

establish that Sterling's indemnification of Overland was for Overland's negligence or occurred

in circumstances where there were claims pending for Overland's negligence, the Court cannot

find that the contract's indemnification language violates § 111.5(6)(b) such that it must be set

aside as void.  Steadfast has not carried its burden of showing that Sterling's payment to

Overland was not "legally obligated" such that Steadfast would be entitled to summary judgment

on that aspect of Sterling's breach of insurance contract claim.

Moreover, even if the Court were inclined to invalidate the second clause of the

indemnification agreement as violating public policy, it would nevertheless have to agree with

Sterling that the third clause remedies the problem.  To whatever extent the second clause can be

read to require Sterling to defend or indemnify Overland in a suit in which Overland is alleged to

be contributorily negligent, the third clause makes clear that Sterling will not defend or

indemnify Overland "to the extent [claims] aris[e] out of . . . negligent acts or omissions of [Overland]." Thus, because the third clause ensures that Overland will not receive defense or indemnification to the extent its own negligent conduct is alleged, the entirety of the indemnification agreement is brought back outside the zone of agreements that the legislature sought to prevent via §111.5(6)(b). Steadfast's response to Sterling's argument on this point invokes the fact that the third clause relates only to Overland's contributory negligence, not to that of Willbros, but as noted above, in a claim that relates to indemnification payments made to Overland, Willbros' negligence *vel non* is irrelevant. Accordingly, the Court denies that portion of Steadfast's motion that seeks summary judgment on Sterling's breach of insurance contract claim as it relates to payments to Overland.

### b. payments for Chase's counterclaim

The Court now turns to Steadfast's challenge to Sterling's contention that Steadfast has breached the policy by not paying an unspecified amount to Sterling as compensation for fees and expenses incurred by Sterling in defending against Chase's breach of contract counterclaim. Steadfast contends that Chase's counterclaim falls outside the coverage of the insurance policy. In particular, Steadfast argues that coverage is limited to "bodily injury" and "property damage" suffered by Sterling as a result of an "occurrence" – that is, an "accident." Steadfast contends that Sterling's decision not to pay Chase's undisputed invoices, resulting in Chase's assertion of a counterclaim, does not fall within these terms.

Sterling's response ties the counterclaim for the unpaid invoices to the "occurrence" of the canal rupture through a somewhat tenuous chain. In Sterling's view, the canal breach caused damage to Overland, which caused Sterling to pay $ 687,000 to Overland, which then caused

Sterling to recoup its losses from Chase by refusing to pay $ 288,750 in outstanding invoices, which caused Chase to file its counterclaim, which ultimately caused Sterling to incur attorney's fees in defense.  Although there are logical links between each of these events, there is a legal break in causation.  The canal rupture did not "cause" Sterling to invoke its contractual provision with Chase to refuse to pay invoices for satisfactory work.  Sterling's decision to recoup its losses by withholding payment from Chase and waiting to be sued in response was Sterling's choice.  Sterling could just as easily have paid Chase on the invoices it had submitted for indisputably competent work, and commenced its own direct suit against Chase for recoupment of some or all of Sterling's $687,000 to Overland.[7]  Sterling's decision not to pay Chase's invoices is a superceding cause that broke any causal chain between the "occurrence" of the canal breach and Chase's counterclaim.  To the extent payment for attorney's fees and costs relating to Chase's counterclaim is a component of Sterling's claim for breach of insurance contract against Steadfast, Steadfast is entitled to summary judgment on that portion of the claim.

       c.   professional services for Overland

Next, Steadfast challenges approximately $ 215,000 that Sterling requests in policy benefits, reflecting payments made by Sterling to Overland for professional services apparently tied to third-party claims against Overland.

Steadfast argues that these payments are excluded from coverage insofar as "reasonable attorney's fees and necessary litigation expenses" are covered by the policy only to the extent

---

[7] Of course, Sterling would have had to foot the bill for its own attorney's fees in such circumstance, rather than sitting back and waiting to be sued so it could then shift the cost of those fees to Steadfast.

that they are "for defense of . . . a civil or alternative dispute resolution proceeding." Steadfast

contends – without any citation to supporting evidence – that "none of the fees or expenses were

incurred in defending Overland in any litigation." The mere fact that Steadfast has failed to

support a key factual contention of this argument with a citation to supporting evidence as

required by Fed. R. Civ. P. 56(c)(1) warrants denial of this aspect of the motion.[8] *Adler*, 144

F.3d at 671.

> d. <u>Willbros' expenses</u>

Finally, Steadfast seeks summary judgment on that portion of Sterling's breach of

insurance contract claim that seeks policy benefits for $ 188,000 that Sterling paid to defend

Willbros against Chase's third-party claim.

Steadfast contends that expenses for Chase's suit against Willbros falls within a policy

exclusion for any contract that "indemnifies an . . . engineer . . . for injury or damage arising out

of [the engineer's] preparing, approving, or failing to prepare or approve maps, show drawings,

opinions, reports, surveys, field orders, change orders, or drawings or specifications, or giving

directions or instructions or failing to give them, if that is the primary cause of the injury or

damage." Chase's third-party complaint (**# 7**) against Willbros alleges, somewhat conclusorily,

that "Willbros provided . . . engineering design services" for the project, and that "negligent,

inadequate and/or deficient engineering design services of Willbros" were the cause of the canal

---

[8]In any event, the Court would also find that Steadfast has failed to make any showing
that justifies the conclusion that referring to the expenditures for any of the non-attorney
professionals as "litigation expenses." Indeed, it is somewhat of an oxymoron for Steadfast to
assert that all of these professional services constitute "litigation expenses," yet deny that the
claims against Overland for which these services were allegedly retained constitute civil
litigation.

breach.

Sterling offers two arguments in response.  First, it contends that Steadfast has waived

this ground for denying coverage by not raising it in a reservation of rights letter prior to

answering the suit.  *Citing United States Fidelity & Guaranty Co. v. Budget Rent-A-Car Sys.,*

*Inc.*, 842 P.2d 208, 210 (Colo. 1992).  Assuming, without necessarily finding, that *Budget* stands

for the proposition that the failure to raise a basis for denying coverage in pre-suit

correspondence can operate as a waiver of the insurer's right to raise that basis later in litigation,

the Court nevertheless finds that Sterling has not pointed the Court to any admissible evidence

that would establish the proposition that Steadfast did not raise the issue promptly.  The only

evidence cited by Sterling for the proposition that Steadfast's invocation of the "engineering"

exclusion came too late is Sterling's statement that "Steadfast first raised this defense in its post-

suit letter dated March 24, 2010, attached hereto as Exhibit FF."  Such exhibit shows that

Steadfast discussed the issue on March 24, 2010, but it does not show that this was the first time

the issue was raised by Steadfast.  To establish that fact, Sterling would need to provide an

affidavit of someone with knowledge of pre-suit discussions.  Because Sterling has not supported

a key factual assertion on this aspect of its claim, the Court declines to find that Steadfast waived

its ability to invoke the "engineering" exclusion, or that it should be estopped from asserting it in

this action.

Sterling's second argument is that Willbros provided a variety of services on the jobsite,

some of which might fall within the "engineering" exclusion (*e.g.* providing engineering plans,

instructing Chase regarding the appropriate entry and exit points), and some which might not

(*e.g.* "failing to properly obtain the right of way on time, thereby allegedly causing Chase to drill

from the wrong end of the canal," "failing to properly supervise the jobsite").  Steadfast responds that coverage for subcontractor liability can be had under the policy <u>if</u> that assumption of liability occurs in an "insured contract"; "thus," Steadfast continues, "the question is whether Sterling's assumption of Willbros' [non-engineering-based] liabilities would constitute an 'insured contract' under the Policy, and the answer is no."  No further elaboration on why "the answer is no" is provided, and the reasons for that answer are not clear to this Court.

Although the Court has some doubt as to the strength of this particular aspect of Sterling's claim for breach of insurance contract, at a minimum it appears that there is a question of fact to be resolved - what services Willbros provided under what contractual terms.  Thus Steadfast's motion for summary judgment on Sterling's claim for attorney's fees incurred in defense of Willbros is denied.

e. <u>Remaining claims</u>

The Court addresses Steadfast's remaining arguments briefly.  Steadfast appears to contend that it is entitled to summary judgment on Sterling's claim for bad faith breach of insurance contract on the assumption that Steadfast would receive summary judgment on each of the components of Sterling's breach of insurance contract claim – that is, "an insurance carrier cannot be held liable for the bad faith refusal to pay where the policy provides no coverage."  Because the Court has found genuine issues of material fact underlying some aspects of Sterling's breach of insurance contract claim, its bad faith breach claim survives to the same extent.

Steadfast seeks summary judgment on Sterling's "claim" for punitive damages on the bad faith claim.  This Court views punitive damages as an item of relief, not a "claim" that can be

subject to judgment.  If, at trial, Sterling has laid a factual predicate warranting the submission of punitive damages to the factfinder, that issue will be submitted; if the factual predicate is not present, punitive damages may not be awarded.  Thus, this is an issue that will await trial.

Finally, Steadfast seeks judgment on Sterling's claim for doubled benefits under C.R.S. § 10-3-1116.  That statute provides for relief upon a showing that "a first-party claimant['s] . . . claim for payment of benefits has been unreasonably delayed."  The Court will not address the entire basket of arguments proffered by Steadfast as to why the claim is defective; in each respect, the Court agrees with Sterling that the claim is at least colorable.  Among other things, although Sterling tendered the claim prior to the statute's August 2008 effective date, the claim was still pending at that time, making any unreasonable delay on the claim occurring after August 5, 2008 actionable.  The Court finds that the claim is timely over Steadfast's statute of limitations argument, insofar as the claim was still pending – and thus, a claim for unreasonable delay in resolving it was continuing to accrue – into 2009, making the November 2010 amendment of the Complaint to assert the claim timely even if the amendment did not relate back to the original filing.  Finally, the Court agrees with Sterling that its claim is a "first-party" claim and not a "third-party" claim as those terms are defined by C.R.S. § 10-3-1115(1)(b)(I) and *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010).  Sterling is the named insured on the policy, seeking benefits payable directly to itself.  As *Nunn* explains, a third-party claim is one in which "an insurance company acts unreasonably in investigating, defending, or settling <u>a claim brought by a third person against its insured</u>."  *Id.* (emphasis added).  Were Overland and Willbros seeking benefits from Steadfast as third-party beneficiaries of Sterling's policy, the first-party element would not be met, but because Sterling is the named insured,

24

seeking benefits payable under its own policy, a claim under § 1116 may lie.

      f.  Bifurcation and discovery objections

There are two matters remaining in the Sterling vs. Steadfast dispute.

First, Steadfast objects to a July 16, 2010 Order by the Magistrate Judge that granted Sterling's motion to compel Steadfast to produce certain documents. In particular, Steadfast identifies two of the documents at issue – STD 1 and STD 2 – as correspondence (STD 1) and "claim notes and communications with internal corporate counsel" (STD 2) that were drafted after this action was commenced, and two documents – STD 3 and a portion of STD 4 – that consist of claim notes authored after Sterling's June 18, 2009 letter threatening a bad faith suit, but prior to the suit being filed. Steadfast had refused to produce the documents in discovery, claiming either attorney-client privilege or the attorney work product privilege.[9]

Relying on *Stillwell v. Executive Fund Life Ins.*, 1989 U.S. Dist. LEXIS 17331, 1989 WL 78159 (D. Colo. 1989) (unpublished), the Magistrate Judge found that bad-faith insurance actions "can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did." As such, the Magistrate Judge explained, "the claims file provides a unique, contemporaneously prepared history of the company's handling of the claim." After reviewing the documents *in camera* (**#69**), the Magistrate Judge concluded that the documents in question "are relevant to Plaintiff's claims" and directed that Steadfast produce them. The Magistrate Judge made no particular

---

[9]Steadfast's privilege log identifies STD 1 as being withheld on attorney-client privilege grounds. The log lumps STD 2-4 (and others) together in a single entry that claims both "attorney-client privilege and work product doctrine," without making clear which documents carry which privilege(s).

findings with regards to Steadfast's claim of privilege.

Steadfast's Objections primarily argue that *Stillwell* is distinguishable.  First, it points out that *Stillwell* found the documents not to be protected by attorney-client privilege, unlike STD 1 and STD 2.  Second, it argues that while *Stillwell* involved claims of work product privilege, it did not involve "opinion work product" (as distinguished from "factual work product").  Steadfast argues that, unlike "factual work product," "opinion work product" is not discoverable simply upon a showing of need.  Fed. R. Civ. P. 26(b)(3)(B).

This Court's review of the Magistrate Judge's determination is somewhat frustrated by the absence of factual findings concerning Steadfast's invocation of privilege.  It is not clear whether the Magistrate Judge found Steadfast's invocation of privilege to be unsupported, or whether the Magistrate Judge found that the documents were privileged but that Sterling's interests of production outweighed Steadfast's interests in preservation of the privilege.  Nor does the Order reveal whether the Magistrate Judge was making findings as to attorney-client privilege, work product privilege, both, or neither.  As a result, the Court conduct its own *in camera* review of each of the documents at issue.

Turning first to an examination of each document for attorney-client privilege issues, the Court notes that STD 1 is nothing more than a transmittal letter, noting the enclosure of the claim file and policy being sent to Steadfast's counsel "per [counsel's] request."  The attorney-client privilege protects "confidential communications by a client to an attorney in order to obtain legal assistance from the attorney in his capacity as legal advisor," as well as those communications from counsel to client that "would have a tendency to reveal the confidences of the client."  *In re Grand Jury*, 616 F.3d 1172, 1182 (10th Cir. 2010).  STD 1 reveals no communication "relat[ing]

to legal advice or strategy sought by the client," *id.*; like the fax cover sheet in *Stillwell*, it does little more than memorialize that a transmission of information occurred. *Id.* ("the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege").

STD 2 consists of two case notes, both authored on September 1, 2009, by Sharon Eppler, a Senior Claims Specialist. The first note concerns a communication that Ms. Eppler had with Anthony Mills, Senior Coverage Counsel, in which Ms. Eppler asked "if I can close my file." Mr. Mills' response first addresses how various sums will be charged to various files within Steadfast, then explains that "I cannot tell you what to do" (apparently referencing Mr. Mills' lack of control over Steadfast's internal file-closing decisions), and finally notifies Ms. Eppler that he will "keep you apprised of any significant developments" in the litigation. This communication does not implicate the attorney-client privilege. Although one might initially construe Ms. Eppler's request as seeking legal advice from Mr. Mills, it is clear from his answer that the advice he is giving is administrative, not legal, in nature, detailing how Steadfast will charge off various expenses to various claim files. Neither that nor Mr. Mills' promise to "keep you advised" of developments in the case constitutes Mr. Mills giving legal advice. Accordingly, the Court finds this portion of STD 2 is not protected by the attorney-client privilege.

The second note in STD 2 consists of Ms. Eppler simply recording in the notes an e-mail from Mr. Mills. That e-mail attaches a copy of Sterling's Summons and Complaint, explains who will be defending Steadfast on the claim, and instructs Ms. Eppler that "any further communication with this insured must go through defense counsel." Arguably, the last two

portions of the note could be said to reflect Mr. Mills giving legal advice to Ms. Eppler, but the attorney-client privilege only protects from disclosure communications from counsel to client where the communication "would have a tendency to reveal the confidences of the client." *Grand Jury*, 616 F.3d at 1182. Mr. Mills' instructions to Ms. Eppler as to who would represent Steadfast and that she should run further communications with Sterling through counsel do not reveal any confidences reposed in Mr. Mills by Ms. Eppler. Accordingly, nothing in STD 2 is protected by the attorney-client privilege.

STD 3 consists of four case notes, all authored in mid-August 2009. Two of the notes, one by Ms. Eppler and one by Chris McDonald, do not make any clear reference to any person identified as an attorney. (Ms. Eppler's note references conversations with Kent Doucet and Karen Campbell, but nothing suggests that either Mr. Doucet or Ms. Campbell are attorneys.) Thus, these two notes cannot be protected by the attorney-client privilege. A third note from Ms. Eppler recites the fact that Ms. Eppler received a call from attorney Thor Inouye, in which he explained that he "may have a conflict representing Sterling." Once again, even if this communication can be said to constitute Mr. Inouye giving legal advice to Ms. Eppler, the communication does not disclose Ms. Eppler's confidences and thus, is not protected by privilege.

That leaves the final note on STD 3. This note indicates that Ms. Eppler "[received a letter] from attorney Peter Dusbabek dated 6-18-09 advising that he represents Sterling Construction for this claim." The remainder of the note summarizes the contents of Mr. Dusbabek's letter, notes that Ms. Eppler "discussed this issue with [Team Member] McDonald," and indicates that Mr. McDonald instructed Ms. Eppler to speak with "CSM Kent Doucet."

Obviously, communications with <u>Sterling</u>'s attorney are not communications for which Steadfast can invoke the attorney-client privilege.  The fact that Ms. Eppler then discussed the matter with two individuals who are not alleged to be attorneys (much less that the conversations sought to obtain legal advice) also fails to give rise to any privilege.[10]   Thus, nothing in STD 3 reveals any attorney-client privilege.

Finally, STD 4 consists of 5 case notes, authored by either Ms. Eppler or by Chris McDonald, between mid-June and mid-July 2009.  Two of the notes make no mention whatsoever of discussions with attorneys, and thus, do not implicate the attorney-client privilege. The remaining three notes all refer to discussions Ms. Eppler had with Mr. Inouye.  One simply memorializes that Ms. Eppler contacted Mr. Inouye "asking him to call and discuss how we want to handle this," and conveys no privileged information.  Another reflects that Mr. Inoye returned Ms. Eppler's call and stated that he was preparing a budget that he would deliver to her tomorrow.  This, too, does not convey any of Steadfast's confidences and thus is not privileged. The final note recites a discussion Ms. Eppler had with Mr. Inouye in which Mr. Inouye conveyed information he received from talking to Sterling's principal, Pat Simpson.  This note essentially recites "conduit" information, in which "a third party's statement was passed along by the attorney to the client."  *Grand Jury*, 616 F.3d at 1183.  Where an attorney is acting as a conduit for non-confidential information, the client may not invoke attorney-client privilege with regard to that communication.  *Id.*  Ms. Eppler's note does not recite any advice given by Mr.

---

[10] Moreover, STD 3 apparently reflects that each case note has a "confidentiality" field in which the author can flag those notes that they believe to be confidential.  Ms. Eppler flagged one of the notes on STD 2, involving her discussion with Mr. Miller, as a "Yes" in the Confidentiality field, but all of the notes in STD 3 are classified with a "No" in the Confidentiality field.

Inouye with regard to Mr. Simpson's statements, and thus, this note simply reflects non-privileged "conduit" discussions.

Accordingly, because none of the documents at issue here implicate the attorney-client privilege, the Court overrules the first ground of Steadfast's Objections to the Magistrate Judge's Order.

Second, Steadfast argues that some of the documents are protected by the work product privilege. Fed. R. Civ. P. 26(b)(3) provides that where discovery is sought of documents "prepared in anticipation of litigation" by another party, that discovery is only available upon a showing of substantial need and undue hardship. *Stillwell*, *supra.* at *2. Although Steadfast has briefly argued that the Magistrate Judge erred in finding that Sterling demonstrated both need and hardship, this Court finds no merit in the contention that the Magistrate Judge exceeded his considerable discretion in reaching that conclusion.

This leaves Steadfast's contention that the order compelling disclosure violates the requirements of Rule 26(b)(3)(B). That rule requires that a court requiring disclosure of such materials must ensure that "the mental impressions, conclusions, opinions, or legal theories" of the party's representatives is not disclosed. Steadfast argues that the materials in STD 1 - STD 4 "outline Steadfast's mental impressions, conclusions, and opinions about Sterling's claim," but does not specifically point the Court to any particular example. Having reviewed each of the documents, the Court sees nothing in the documents that reflect Steadfast's "mental impressions" about Sterling's claims.[11] Collectively, the documents at issue here simply memorialize that

-----

[11]At best, one of the notes in STD 2 indicates that Karen Campbell believes that "[Sterling] and their attorney are in the wrong," apparently with regard to their pre-suit demand. Of course, this "mental impression" that Steadfast sees no merit in Sterling's claims is self-

certain conversations occurred, often about entirely mundane or administrative topics, and simply summarize (without meaningful editorial gloss) the information conveyed to Steadfast and its attorneys from third parties.  Nothing in the documents appears to reflect "conclusions, opinions, or legal theories" reached by Steadfast with regard to the claims in this action.  Thus, the Magistrate Judge's Order did not violate Rule 26(b)(3)(B).

Accordingly, the Court finds that Steadfast's Objections to the Magistrate Judge's Order are without merit, and the Court affirms that Order.

Steadfast's remaining motion seeks to bifurcate questions of insurance coverage (*i.e.* the Sterling vs. Steadfast claims) from questions of liability for the canal breach (*i.e.* the Sterling vs. Chase claims and counterclaim).  Steadfast argues that the two types of claims raise distinct issues and that a sequential, rather than simultaneous, determination of those claims would be more efficient.  The Court denies this motion without prejudice.  Now that the parties have completed discovery, the question of bifurcation is one that simply relates to how the trial will be conducted.  Without the benefit of a proposed Pretrial Order and some elucidation as to how the parties propose to handle the two types of claims in a joint trial, the Court is not prepared to make an informed ruling on the relative merits of bifurcation versus a simultaneous trial. Accordingly, the question of bifurcation is one to be taken up at the Pretrial Conference stage, and the Court declines to address it now.

### C.  Chase v. Willbros

The final set of motions involve the aftermath of the Court's dismissal (**# 97**) of Chase's

---

evident, making it difficult to see how protection of this particular "mental impression" is warranted.

tort claims against Willbros.  Willbros now seeks attorney fees and costs against Chase pursuant to C.R.S. § 13-17-102(2), and seeks entry of partial judgment in its favor pursuant to Fed. R. Civ. P. 54(b).[12]

Willbros requests an award of approximately $180,000 in attorney fees and costs against Chase pursuant to C.R.S. § 13-17-102(2).  That statute provides that " the court shall award . . . reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification."  The statute defines the phrase "lacked substantial justification" as meaning "substantially frivolous, substantially groundless, or substantially vexatious."  C.R.S. § 13-17-102(4).  A claim is "groundless" when the allegations in the complaint are not supported by any credible evidence; a claim is "vexatious" when it is brought or maintained in bad faith.  *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 511 (Colo. App. 2009).

The Court's Order dismissing Chase's claims against Willbros was based on the fact that Chase had pled tort claims when the structure of the subcontractor agreements and the economic loss rule permitted Chase to seek relief only under a contract theory.  In large part, that decision was one of nomenclature, not substance: as noted above, the contract that would give rise to Chase's remedy against Willbros essentially incorporated tort duties, such that the claim being asserted is a "tort claim in a contractual wrapper."  Willbros did not maintain, and the Court did

---

[12]After Chase filed its response to Willbros' request for attorney's fees, it sought leave to file a supplemental brief or surreply to "give the Court a better understanding of Chase's position and clarify issues pending before the Court."  Chase's motion does not contend that the arguments it intends to proffer in the supplement/surreply are based on newly-discovered facts or new law, nor otherwise explain why Chase did not raise those arguments in its initial response to the motion.  Finding no good cause for a supplement or surreply, the Court denied Chase's motion.

not find, that Chase's factual allegations were groundless or that even a properly denominated contract claim against Willbros would have been considered frivolous or vexatious. Given the close relationship between tort and contract claims in this circumstance, Chase's decision to resist the motion to dismiss and double-down on a contention that the claim properly sounded in tort may certainly have been unwise, but it was not so "frivolous" as to warrant an award of fees. Accordingly, Willbros' motion for attorney's fees is denied.

That leaves Willbros' request for entry of partial judgment pursuant to Fed. R. Civ. P. 54(b). In a case involving multiple parties, that rule permits the Court to enter a partial judgment in favor of one or more, but fewer than all, parties upon a finding that there is no just reason to delay review of the final order as against some parties pending the Court's conclusive resolution of all other claims presented by all other parties. Fed. R. Civ. P. 54(b), *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001). The Court must ensure that a Rule 54(b) certification fully disposes of the particular legal and factual issue presented in the case; otherwise, "interrelated legal claims and alternative theories for recovery should be litigated together and appealed together." *Jordan v. Pugh*, 425 F.3d 820, 829 (10th Cir. 2005).

Here, it appears that Chase has elected not to seek leave to replead its claims against Willbros, ensuring that the order dismissing those claims was final and conclusive of Chase's claims against Willbros. But both the factual and legal issues underlying Chase's claims against Willbros live on in this case. As noted above, Chase has designated Willbros as a non-party at fault in Sterling's breach of contract claim against Chase. That designation raises the same factual issues as Chase's claims against Willbros (*i.e.* Willbros, not Chase, was responsible for the canal breach), as well as legal issues that closely relate to the grounds upon which the Court

dismissed Chase's claims (*i.e.* whether the claims between Sterling and Chase – and by extension, between Chase and Willbros – are properly treated as tort claims, contract claims, or some hybrid).   Under cases such as *Jordan*, the factual and legal similarities between the dismissed claims against Willbros and the claims that continue in this case might very well "required the court of appeals to visit the same issues decided" in multiple appeals, thereby making Rule 54(b) certification inappropriate.  425 F.3d at 827.  Willbros has not argued that it will suffer anything more than an abstract hardship if judgment is not entered in its favor immediately.  *Id.* at 829 ("Partial final judgment is intended to serve the limited purpose of protecting litigants from undue hardship and delay in lawsuits involving multiple parties or multiple claims").  Absent such a showing, and with a significant showing of overlapping factual and legal issues between the partial judgment Willbros seeks and the issues continuing in the case, the Court finds that granting partial judgment under Rule 54(b) is inappropriate.

## CONCLUSION

For the foregoing reasons, Steadfast's Objections (**# 86**) are **OVERRULED**, and the Magistrate Judge's July 16, 2010 Order (**# 84**) is **AFFIRMED**.  Chase's Motion for Summary Judgment (**# 100**) on its counterclaim is **GRANTED IN PART**, insofar as the Court finds as undisputed fact that Sterling is liable to Chase in the amount of $288,750, but **DENIED IN PART**, insofar as the Court finds that entry of judgment on that sum must await the outcome (and potential offset) of Sterling's claims against Chase.  Sterling's Cross-Motion for Summary Judgment (**# 105**) against Chase is **DENIED**.  Steadfast's Motion to Bifurcate (**# 110**) is **DENIED WITHOUT PREJUDICE**, subject to being re-raised in conjunction with the Pretrial Conference. Willbros' Motion for Attorney's Fees (**# 136**) against Chase is **DENIED**.  Chase's

Objections (# 140) are **SUSTAINED**, and the Court **VACATES** the Magistrate Judge's December 1, 2010 Order (# 135) and **REINSTATES** Chase's Supplemental Designation of Non-Parties at Fault (# 108).  Steadfast's Motion for Summary Judgment (# 143) is **GRANTED IN PART**, insofar as Steadfast is entitled to summary judgment on that portion of Sterling's breach of contract claim that seeks policy coverage for attorneys' fees and costs incurred by Sterling in its defense of Chase's counterclaim against it, and **DENIED IN PART** in all other respects.   Chase's Motion for Leave to Supplement (# 145) is **DENIED AS MOOT**.  Willbros' Motion for Entry of Partial Judgment Pursuant to Fed. R. Civ. P. 54(b) (# 157) is **DENIED**. Chase's Motion for Leave to Supplement (# 174) is **DENIED**.

The Court observes that the period allotted for discovery has concluded and the Court has disposed of all pending dispositive motions.  Accordingly, all that remains is to set a Pretrial Conference and schedule trial.  Accordingly, the Court will conduct a Pretrial Conference on **Tuesday, November 22, 2011** at **4:00 pm**.  The parties shall comply with the directives in the Trial Preparation Order (# 43) with regard to that Conference.  The parties shall be prepared to set this matter for trial in a period of time approximately 60-90 days from the date of the Conference.

Dated this 6th day of September, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge